[Civ. No. 4069. Third Appellate District.—June 12, 1930.]

WILLIAM MICOU GLASSELL et al., Appellants, v. THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

Otto & Linn, Roy A. Linn and Paul J. Otto for Appellants.

Jess E. Stephens, City Attorney, Herman Mohr, Deputy City Attorney, and Dryer, Castle, McConologue & Richards for Respondents.

TUTTLE, J., *pro tem.*—This is an action brought to enjoin defendants from further proceedings under the Improvement Act of 1911. The trial court found that said proceedings were regular and valid, and judgment was entered denying any relief to plaintiffs. From this judgment plaintiffs have appealed.

The proceedings were started under ordinance of intention No. 55,713 of the City of Los Angeles, entitled: "An Ordinance declaring the intention of the Council of the City of Los Angeles to order the improvement of portions of Verdugo road, and other streets, alleys, walks and rights of way in the City of Los Angeles by the construction of storm drains and appurtenances and sanitary sewers and appurtenances; said storm drains to be known as the Verdugo road and Glassell avenue storm drain system; and declaring the work or improvement to be of more than local or ordinary public benefit; and describing the district to be benefited by said work or improvement and to be assessed to pay the costs and expenses thereof; and determining that bonds shall be issued to represent said costs and expenses; and fixing a time and place for hearing objections to said work or improvement, or to the extent of the district to be assessed, or both."

The assessment district described in ordinance of intention consists of 118,104,629 square feet and the plaintiffs herein own 3,716,630 square feet of land in said assessment district. Plaintiffs herein filed notice of erroneous proceedings, pursuant to section 16 of the Improvement Act of 1911, setting out the alleged defects, errors and irregularities in said proceeding.

After the passage and publication of the ordinance of intention, the board of public works posted a notice of improvement. Thereafter, the council of the City of Los Angeles adopted an ordinance, ordering the work to be done. Notice inviting street proposals was posted and published. Bids were received and contract was awarded; the notice of award of contract was published and posted.

Thereafter the contractor signed the contract and the work was completed at a cost of $660,000. Bonds were duly issued under the provision of the Improvement Act.

The work done under these proceedings was not the ordinary street improvement. It involved, and, in fact, was entirely concerned with the construction of a *storm-drain system* for the benefit of the district described, and for the performance of work incidental, necessary and appurtenant thereto.

Section 16 of the Improvement Act of 1911, as amended (Stats. 1923, p. 108), is as follows:

"At any time within ten days from the date of the first publication of the notice of award of contract, any owner of, or other persons having any interest in any lot or land liable to assessment, who claims that any of the previous acts or proceedings, relating to said improvement are irregular, defective, erroneous or faulty, may file with the clerk of the city council a written notice specifying in what respect said acts and proceedings are irregular, defective, erroneous or faulty. Said notice shall state that it is made in pursuance of this section. All objections to any act or proceeding occurring prior to the time within which such objections are permitted to be filed in relation to said improvement, not made in writing and in the manner and at the time aforesaid, shall be waived, provided the resolution of intention to do the work has been actually published, as provided in this act."

Acting under the foregoing section, appellants filed their written notice, specifying, in seventeen particulars, the alleged defects in the proceedings. The objections of appellants were overruled by the council. These defects, it is contended by appellants, render the said proceedings invalid and void.

Before taking up the various objections raised, we take occasion here to point out the rules which govern an attack of this character, upon proceedings under the Improvement Act and similar statutes.

Section 82 of the act in question provides as follows:

"This act shall be liberally construed to the end that its purposes may be effective. No error, irregularity, informality and no neglect or omission of any officer of the city in any proceedings taken hereunder, which does not

directly affect the jurisdiction of the city council to order the improvement, shall avoid or invalidate such proceeding or any assessment for the work done."

In the case of *Haughawout* v. *Raymond*, 148 Cal. 311 [83 Pac. 53], the court says:

"Notwithstanding that the proceedings for street work and sewer work, like proceedings in taxation, are *in invitum*, and that therefore a fairly strict and accurate compliance with all the statutory requirements is necessary, this is the limit to which any court could be expected to go in disposing of the questions which are involved. The contractor who has honestly and substantially complied with his contract, of which the property owners have received and will continue to receive the benefit, is quite as much entitled to the protection of the law as are the property owners themselves, and, upon the other hand, an endeavor, even a successful endeavor, upon the part of the property owners to defeat the just claims of such a contractor by a resort to the extreme technicalities of the law can, upon the whole, operate only to the disadvantage of the property owners themselves, since it necessarily tends to increase the price at which any and all future contractors will be willing to engage in work, payment for which, after having been duly performed, is met with harassing and vexatious delay, with the prospect at the end of utter failure of recovery."

Generally, defects in street improvement proceedings may be classified under two heads: First, there are those defects which are jurisdictional in the sense that they arise out of failure to meet statutory requirements in relation to matters which are necessary for a compliance with the constitutional provisions that property shall not be taken without due process of law, or with other constitutional provisions, and secondly, those defects which, while they may be denominated jurisdictional, in that they do not meet statutory requirements, may be waived by failure to object to the same at the proper time, manner and place, and may be cured by action of the legislature. (*Watkinson* v. *Vaughn*, 182 Cal. 55 [186 Pac. 753].)

In section 7 of the Improvement Act there is the following clause: "If no protests or objections in writing have been delivered to the clerk up to the hour set for hearing

provided in Section 3 hereof, or when a protest shall have been found by said city council to be insufficient, or shall have been overruled, or, when a protest against the extent of the proposed district shall have been heard and denied, immediately thereupon the city council shall be deemed to have acquired jurisdiction to order the proposed improvements. (As amended, Stats. 1915, p. 1466.)''

The relief sought in this action is injunctive, and the court is also asked to declare the proceedings null and void. As the entire proceeding has been carried out and consummated, the matter of an injunction has become abstract and moot. The sole question before this court is whether or not the said proceedings are null and void.

The position of appellants upon this appeal is stated by them to be as follows: ''Appellants' attack upon these proceedings is an attack upon the jurisdictional defect in the proceedings and the failure of the Council of the City of Los Angeles to obtain jurisdiction over the work.'' There has been some confusion as to the significance of the word ''jurisdictional'' in the decisions upon the subject of street improvement proceedings. Appellants appear to claim that every act required by law to be done by any person, board or body in the course of the proceeding is ''jurisdictional'' in the sense that its omission or defective performance ousts jurisdiction and renders all subsequent acts void. It is obvious that the manner of proceeding after the council has acquired jurisdiction to order the work done are matters within the legislative discretion. The legislature, at any time, could amend the law by omitting all the details after jurisdiction is acquired, and giving the council the general power to get the work done by such means and in such manner as it deems best, and the law would still be constitutional. (*Chase* v. *Trout,* 146 Cal. 350 [80 Pac. 81].)

The questions presented are, first, whether or not the alleged defects do, in fact, exist, and, secondly, if they do exist, are they jurisdictional in the sense that they render the entire proceedings void.

Practically the entire attack upon the proceedings here involved is made upon the ordinance of intention, and the plans and specifications filed in connection therewith. Section 3 of the Improvement Act of 1911, as it stood when this ordinance was passed, read as follows:

"Before ordering any work done or improvement made, which is authorized by this act, the city council shall pass a resolution of intention so to do referring to the street by its lawful or official name, or the name by which it is commonly known, and briefly describing the work. Said resolution of intention shall be published twice in one or more daily, semi-weekly, or weekly newspapers published and circulated in said city, and designated by said council for that purpose. The city council may include in one proceeding, under one resolution of intention and in one contract, any of the different kinds of work mentioned in this act and any number of streets and rights of way or portions thereof, and it may except therefrom any of said work already done upon a street to the official grade. The lots and portions of lots fronting upon said excepted work already done shall not be included in the frontage assessment for the class of work from which the exception is made; provided, that this shall not be construed so as to affect the special provisions as to grading contained in subdivision nine of section twenty of this act.''

It is first contended that the ordinance does not describe the work in the following particulars: there is a conflict between the plans and ordinance; a conflict between the ordinance of intention and ordinance ordering work; classes of work are not named, and rights of way are not described.

The ordinance of intention is in two sections, the first section relating to the construction of the storm-drain proper, and the second section relating to the construction of sanitary sewers. The first section states ''that certain concrete drains, reinforced concrete storm drains, reinforced concrete pipe storm drains, cement pipe storm drains, together with certain appurtenances and appurtenant work, be constructed in Verdugo road'' and other named streets, alleys and rights of way named in said ordinance. It is appellants' contention that this language means that the council intended to order the construction of a concrete storm drain, reinforced concrete storm-drain, reinforced concrete pipe storm-drain, cement pipe storm-drain, together with certain appurtenances and appurtenant work in each and every portion of each and every street, alley or right of way mentioned in section one of said ordinance of inten-

tion. The plans, of course, show that this is only one type of storm-drain to be constructed in any particular place. Appellants contend that this causes a conflict between the ordinance of intention and the plans, and a resultant ambiguity, which renders the proceedings void, and that by reason of this conflict the city council never obtained jurisdiction to order the work.

The same objection is made to section two of the ordinance of intention for the reason that it provides ''that cement pipe and cast iron pipe sanitary sewers, together with certain appurtenances and appurtenant work be constructed in certain named streets, alleys and rights of way,'' and that the plans show that only one type of sewer-pipe is to be laid in any one place.

Prior to the amendment to section 3 of the Street Improvement Act of 1911, in 1923, the section simply stated that the resolution shall briefly describe the work. In 1923 the section was amended, and after the phrase ''and briefly describing the work,'' the following was added, ''the said resolution of intention shall be sufficient if it states in general terms the classes or kinds of work contemplated, such as grading, paving, sewering, or other work or improvements, and gives in general the location of the proposed improvement, and refers to plans, profiles, detailed drawings and specifications, or such of them as may be suitable or proper, for the full and detailed description of said proposed work or improvement.'' In our opinion it would have been sufficient if the resolution of intention had simply stated that it was the intention of the city council to order storm-drains to be constructed in portions of certain named streets, alleys and rights of way, and referred to plans and profiles for the details. The council in this case went further than is required by section 3 of the Improvement Act, and listed the types of storm-drain. They are not different classes of work, but simply different types of storm-drain, which are details of construction, and which it is unnecessary to set forth in the resolution of intention if a reference is made to plans and specifications where the details of the construction are delineated. The plaintiffs and appellants, neither in their complaint, nor in their brief, allege that they were in any way misled or deceived by the method of description used, for they follow the alle-

gation that the council intended to order the construction of five different types of storm-drains in each and every portion of each and every street, alley and right of way named in section one of the ordinance, with the statement that this was not true, that the plans called only for one type of storm-drain to be constructed in any one particular place.

The construction of appellants could only be supported on the theory that the ordinance of intention must stand alone and cannot be aided by reference to plans and specifications, and that the law contemplates that the ordinance of intention describe in words all the details of construction. Such a description in words would not only be impossible to give, but is also expressly not required by the language of the act itself. The types and sizes of storm-drains change constantly, depending upon the condition of the terrain and the area drained. A graphic description is the only one that would serve any useful purpose and convey to the property owner an idea of what was contemplated. This was given in the present case in the plans and detailed drawings. The objection is a trivial one, and without merit.

■ Another contention of the plaintiffs and appellants, made under this heading, is that the plans wholly failed to mention certain work called for in the ordinance of intention, for the reason that the ordinance of intention calls for work in Avenue 30 *between* Glassell Avenue and a line parallel with and 600 feet northwesterly therefrom, while the plans only call for work in Avenue 30 between Glassell Avenue and a line parallel with and 500 feet northwesterly therefrom. In other words, the ordinance locates the work to be done between two points on Avenue 30, namely, Glassell Avenue and a line parallel with and 600 feet northwesterly therefrom, and the plans show that the work is to be done for a distance of ony 500 feet northwesterly from Glassell Avenue. Under the provisions of section 3 of the Improvement Act of 1911, all that is required is that the resolution of intention "gives in general the location of the proposed improvement and refers to plans, profiles, detailed drawings and specifications, or such of them as may be suitable or proper for the full and detailed description of the said proposed work or improvement." If the ordinance attempted to locate the work precisely, and had stated that certain work be constructed

*from* one point *to* another, there might be some merit in appellants' contention. But as in this ordinance, the intent is to give its general location by stating that the work was to be constructed *between* two located points, and as the plans show that the work was to be constructed *between* those identical points, there is nothing to complain of. Objection is also made by appellants to the fact that the ordinance locates work on Campus Road adjacent to Alumni Avenue, while the plans show the work to be on Campus Road north of its intersection with Alumni Avenue. Similar objections are made to other cases of the same kind. This argument fails to take into consideration the purpose of the provisions of section 3 and the plain meaning of the language therein used. In our opinion the ordinance herein questioned gives, in general, the location of the proposed improvement, and refers to plans and detailed drawings for the full and detailed description of the said work.

It is also contended by appellants that the plans call for work which is not mentioned in the ordinance of intention. In support of this contention, appellants point out that the plans call for the construction of a concrete gutter, rock and oil surfacing and remodeling of asphalt pavement. While it is not so stated, and while it is impossible to determine from their brief, it is presumed that the appellants are objecting to street work being classified as appurtenant to a storm-drain. Section 2 of the Improvement Act of 1911 enumerates the classes of work which are authorized by, and which may be constructed under the act. It is divided into fourteen lettered subdivisions, each of which enumerates several kinds of work, such as (a) grading and paving, (b) miscellaneous work, including sidewalks and gutters, (c) sanitary sewers or instrumentalities of sanitation, etc., (d) drains, tunnels, sewers, conduits, culverts and channels for drainage purposes, with necessary outlets for cesspools, manholes, catch-basins, flush tanks, septic tanks, disposal plants, connecting sewers, ditches, drain conduits, channels and appurtenances; the other lettered subdivisions from (e) to (m), inclusive, call for various other classes of work, and (n) all other work auxiliary to any of the above which may be required to carry out the same. Appellants evidently contend that by reason of work which is included in classifications other than in subdivision (d) as

appurtenant work, the proceedings are rendered void. It is to be noted that subdivisions (c) and (d) of said section 2 of the act are the only subdivisions which provide for appurtenances. This construction of section 2 fails entirely to take into consideration the purpose of the provisions of section 3, which begins by requiring the ordinance of intention to describe briefly the work. This provision has been in the act from the first, and its purpose is to identify the work and its locality. This purpose is as well accomplished by a statement that certain work is to be done as an appurtenance to other work as it would be if the words referring to the appurtenant character of the work were omitted. The provision of section 3 concerning the statement in general terms of the kind or class of work was created by the amendment of 1923, and is in the nature of a saving clause. Its evident object is to set at rest doubts and uncertainties as to what constitutes a sufficiently brief description of the work, and is not a provision intended to make any additional requirements as to the contents of the resolution.

▆ Appellants' contention that plan No. 29910 shows work on San Fernando Road from Hallett Street to Verdugo Road, and on Colorado Boulevard from Windermere Avenue, Eagle Rock, to Eagle Rock Avenue, which is not mentioned in the ordinance of intention, is explained by an inspection of plan No. 29910 (exhibit No. 4), wherein it appears, by express statement, that the work referred to by appellants was to be constructed under a different proceeding, namely, the San Fernando Road, Tyburn Street to Huron Street, and the Eagle Rock Storm-Drain System. Parts of the three storm-drain systems were delineated on the same plan, No. 29910, and the ordinance of intention in referring to said plan No. 29910 referred only to the work delineated thereon, which was to be constructed under the Verdugo Road and Glassell Avenue Storm-Drain System. By reason of the fact that the three storm-drain systems, all constructed under three separate and distinct proceedings, were in the same vicinity and drained adjoining and contiguous area, it was necessary that certain parts of the work to be constructed under each proceeding be shown on the same plan. At the top of each portion of the plan showing the work to be constructed under that proceeding,

the name of the proceeding is set forth. In the legend is set forth the names of the three storm-drain systems, giving the location of the work to be constructed under each system. This was all necessary and proper, and could not, by any possible stretch of the imagination, mislead or confuse any property owner.

Complaint seems to be made by appellants that plan No. D–163 calls for the construction of standard Raymond concrete piles for the purpose of carrying the load of the sanitary sewer across the Los Angeles River, because said work is not mentioned in the ordinance of intention. This, of course, is a detail of construction, which is shown on the plans, and which it is unnecessary to set forth in the ordinance. Appellants also complain that exhibit No. 2, plan No. 29901, contains details of wing walls and apron walls. The same answer applies to this objection. These are all details of construction which the law contemplates shall not be set out in the resolution of intention, but which shall be sufficient if they are delineated and shown on the plans. Both are appurtenant to the storm-drain system.

It is contended that the plans and specifications call for work that should not be paid for by the property owners, and that the plans make provisions such as to greatly increase the cost of the work. No evidence was offered in proof of these issues, and the finding of the court against appellants will not be disturbed. There is also an objection that extra work was called for in the plans, and that this is work which could have been foreseen and determined in advance. Here, again, the findings, which are adverse to appellants, should not be disturbed, as appellants offered no evidence in support of this affirmative issue. We cannot assume that the alleged irregularities increased the cost of work. The presumption is that the findings upon these issues are correct.

It is contended that the city did not own the rights of way for the proposed improvement. Certain rights of way were not owned by the city at the time the ordinance was passed, but at that time the city had obtained an order for the immediate possession of this property, under condemnation proceedings, and before judgment was entered in this action a final order of condemnation had been made. Under section 1 of the Improvement Act,

work may be done upon property for which an order to take immediate possession and use has been obtained in any action in eminent domain. Section 26 of the Improvement Act also provides that, ''no proceeding taken or had under this act shall ever be held to be invalid on the ground that the street, right of way, public property or any portion thereof, upon which the work or improvement, or any part thereof, is or was done, has not been lawfully done or dedicated, or acquired, provided the same is lawfully dedicated or acquired at any time before judgment is entered in the suit involving such proceeding.'' The objection is without merit. An objection is raised to rights of way over lands of the Los Angeles Railway Corporation and Southern Pacific Company. It is claimed that the former had no title to convey, and that rights over the lands of the latter were acquired subsequent to the passing of the ordinance of intention. Suffice it to say that the court found against appellants upon these issues, and there is ample evidence to support those findings.

It is next contended that the notices of improvement, inviting bids, and awarding the contract are insufficient in the matter of a description of the work. This objection is predicated upon the insufficiency of the ordinance of intention, and what we have said above is applicable to this contention also.

Other objections, such as grades not given; work without power of council to do included; specifications changes illegally; no specifications for work, and work on property dedicated for playground purposes have been duly considered by us. This opinion, perhaps, has been unduly prolonged by a discussion of what may be termed the more vital questions affecting jurisdiction. We are of the opinion that the objections last mentioned are without merit.

We have come to the conclusion that the alleged defects relied upon do not in fact exist, hence it is unnecessary to pass upon the question as to whether or not they are jurisdictional in the sense that they would avoid the proceedings.

After a careful review of the entire proceedings, we have arrived at the conclusion that the plans and specifications are sufficiently definite and certain, upon all the details of the work which materially affect its cost, to apprise bidders

of all the essential and substantial parts of the work and enable them to know, with reasonable accuracy, the outlay they will have to make in performing the work contracted for; that the property owners within the district were sufficiently informed as to the nature, character and location of the proposed improvements; that all jurisdictional requirements have been met; and that no sufficient showing has been made by the appellants to justify a nullification of the proceedings.

Judgment affirmed.

Plummer, J., and Finch P. J., concurred.