[Civ. No. 13836. Second Dist., Div. Three. June 9, 1943.]

ROSA T. REMMERS, Appellant, v. JOE CICILIOT et al., Respondents.

114

Clark & Morgan for Appellant.

John Henderson Pelletier for Respondents.

SHINN, J.—Plaintiff and defendants entered into a written agreement for the exchange of real property, that of plaintiff consisting of a small business property in Monrovia, that of defendants a 5-room residence in Pomona. Plaintiff's property was subject to a $2,500 trust deed, defendants' was clear, and defendants were to pay plaintiff $100 in cash. They opened an escrow with a bank as escrow holder and signed escrow instructions which were of themselves a complete agreement for the exchange. Before the escrow was closed defendants attempted to rescind the agreement and gave notice that they did rescind upon the claim that plaintiff's property had been misrepresented to them.

Plaintiff sued for specific performance; defendants answered, admitting the execution of the agreement and alleging that they had been induced to enter into it by certain fraudulent representations, as follows: that plaintiff's property had cost her $6,000 and was of the market value of that amount; that plaintiff's property had been leased to one S. J. Volturo for five years at a rental of $40 a month for the first year, $45 a month for the second year, and $50 a month for the remainder of the term, and that said Volturo was financially responsible, whereas the property was not worth more than $3,000 and Volturo was financially irresponsible and was acting only as the agent and dummy for plaintiff and posing as her lessee in order to enable her to dispose of the property. It was also alleged that the exchange of properties was "unjust, unfair, unreasonable and inade-

quate," and that said properties were not of equal value and that defendants would have received an inadequate consideration under said exchange.

Following trial of these issues the court made findings, concluded therefrom that plaintiff had no cause of action for specific performance, and entered judgment for defendants.

We are unable to discover in the findings any basis for the judgment. After reciting the making of the agreement and defendants' effort to rescind, the findings read as follows: "VI. That in entering into the agreement described in paragraph I hereof, plaintiff was seeking to acquire the Pomona property for purposes of resale only and as a purely business and speculative venture, and not for the purpose, or with the intent, of using said Pomona property as a home or in any way having intangible value not compensable in money."

"VII. That plaintiff has suffered no damage as a result of the failure of consummation of the agreement described in paragraph I hereof or as a result of defendants' refusal to consummate said agreement; that if plaintiff had suffered any damage for any such reason, and if she had any cause of action against defendants or either of them for any such damage, she would have an adequate remedy at law, and that any such damage could be fully compensated by money."

The controlling issues in the case were whether the contract was just and reasonable as to the defendants and the consideration to be received by defendants in the exchange adequate, and whether defendants' consent to the contract had been obtained by fraud of the plaintiff entitling them to rescind. The findings are not sufficient to dispose of either of these issues.

The complaint did not allege facts to show that the contract was just and reasonable and the consideration adequate, as it should have done. (Civ. Code, sec. 3391; *George v. Weston*, (1938) 26 Cal.App.2d 256, 261 [79 P.2d 110]; *Walker v. Clark*, (1926) 80 Cal.App. 520, 523 [252 P. 334]; *Williams v. Foss*, (1924) 69 Cal.App. 705, 707 [231 P. 766]; *Joyce v. Tomasini*, (1914) 168 Cal. 234, 237 [142 P. 67].) However, no demurrer was filed and no objection was made at the trial to the sufficiency of the complaint. Moreover, the deficiencies of the complaint were supplied by the affirmative

allegations of the answer, which put in issue the justness of the contract and the adequacy of the consideration passing to defendants under the contract. These affirmative allegations were deemed to have been controverted by plaintiff (sec. 462, Code of Civ. Proc.) and the trial proceeded apparently upon the theory that the pleadings were sufficient to allow the admission of evidence upon those issues; at least no objection was made that the pleadings were insufficient. The record is practically destitute of evidence as to the fairness of the contract or the adequacy of the consideration, but what little evidence is found in the record is in plaintiff's favor. There was conflicting evidence as to the alleged representation as to value but no evidence as to the falsity of the representation. There was also testimony as to a representation of responsibility and some evidence tending to show financial irresponsibility upon the part of Volturo, but discussion of this evidence is unnecessary because there was no finding as to the truth of the charges of fraud.

■ Since it was the duty of plaintiff to prove the fairness of the contract and the adequacy of the consideration passing to defendants, in the absence of any evidence on those issues the court would have been warranted in making findings thereon in favor of defendants (*Glassell* v. *City of Los Angeles*, (1930) 106 Cal.App. 395, 407 [291 P. 227]; *Kohner* v. *National Surety Co.*, (1930) 105 Cal.App. 430, 439-40 [287 P. 510]), and if there were such findings they would furnish support for the judgment.

■ We cannot find in this rule support for the judgment. There was no specific finding on the issue of fairness or adequacy of consideration, but finding No. VII, which we have quoted, does, by inference, determine those issues in favor of plaintiff. The finding obviously was not intended to be a specific finding on the issues in question but it is sufficient to indicate that the trial court was of the opinion that the contract was fair and the consideration adequate.

The question of the fairness of the contract was no broader in this case than the question of adequacy of consideration. The defendants had nothing to do except to convey their property for a given consideration and enter into possession of the property which they were acquiring. If they were to receive full value for what they parted with there would have been no basis for a claim that the exchange was not just and reasonable.

The finding to the effect that plaintiff suffered no damage from defendants' refusal to consummate the exchange undoubtedly was intended to be a finding that plaintiff's property had a value as least equal to that of defendants' property. In summing up the case at the conclusion of the trial, the court said, in part, as follows: ". . . the evidence not only fails to show that the plaintiff has been damaged, but rather tends to show to the contrary. . . . So it appears here from the evidence that what she was to receive was certainly not worth any more than the property that she was to give; and the weight of the evidence would seem to indicate that her own property was worth more than the other. So that, rather than being damaged by this breach of agreement to buy, she has been benefitted by it." It is true that there was very little evidence which touched upon the questions of value and the justness and reasonableness of the contract, but it was not entirely lacking. The witness Sigler, a real estate broker who was representing defendants in the exchange, in answer to the questions by the court, testified as follows: "Q. Did Mr. or Mrs. Ciciliot ever ask for your opinion concerning the values of either of these pieces of property? A. They simply put it in this way—after the escrow they said—after we came out of the bank, Mr. Ciciliot said: 'Well, do you think I made a good deal?' Q. That was after the escrow? A. Yes. And I said: 'I think you did, in view of the fact that you are getting something you wanted —a bakery, and you have been trying for some time to acquire something of that sort.' Q. That was your honest opinion at that time? A. That is at the present time, too, yes, sir—considering, of course, that he is a baker, and that was a bakery shop. THE COURT: That is all." This testimony was perhaps supplemented to some extent by photographs of the properties which the respective parties introduced in evidence and by their descriptions as given by the witnesses. But the opinion thus expressed, admitted without objection, and in the absence of any contradictory evidence, appears to have persuaded the trial court that the contract was one which would not have resulted in any advantage to plaintiff. That the court was so persuaded is evidenced by the remarks which we have quoted, which certainly indicate that if more specific findings had been made on these issues they would have been favorable to plaintiff. Significant also is the fact that defend-

ants, evidently believing that the burden was upon them to prove that the consideration was inadequate, that is to say, that plaintiff's property was worth less than she had represented, made no effort to do so.

We are not intimating that the findings were sufficient to have supported a judgment for plaintiff. That is not the question. Here we have a judgment for defendants. The question is whether we should affirm it because of the rule that the court would have been justified in finding in favor of defendants upon the issues of reasonableness and adequacy of consideration if plaintiff failed to sustain the burden of proof. This rule does not apply because the court made no such finding. Should we affirm the judgment in the absence of a finding upon those issues, on the theory that had a finding been made it would necessarily have been in favor of defendants? We have shown that this cannot be done. Our quotations from the record show that it is not true that there was an entire absence of evidence that the contract was just and reasonable and the consideration adequate. And finding No. VII, together with the quoted remarks of the trial judge, preclude us from saying that had more specific findings been made they would necessarily have been in defendants' favor. It is quite evident, as we have said, that they would probably have been in plaintiff's favor. It necessarily follows that the judgment for the defendants cannot stand in the absence of a finding that the contract was not just and reasonable or that the consideration was inadequate, (especially in view of finding No. VII) unless there is some other finding to support it.

We have alluded to the fact that there was no finding made upon the defense of fraud but we do not undertake to account for this omission. The record discloses that plaintiff's counsel requested a finding upon the allegations of fraud. We also find in the court's summary of the evidence the following: "Certainly it is true, as Mr. Clark has said, that so far as the representations of the value of the property are concerned, the evidence does not support a finding that that representation was false; . . ." It was not necessary that the court make a finding as to the alleged fraud if the findings were otherwise sufficient, but this and other omissions fasten our attention on the findings which we have already quoted, which are, in substance, that plaintiff was seeking to acquire defendants' property for resale and as a purely business and

speculative venture and not to use it as a home; that plaintiff suffered no damage by defendants' breach of the agreement, and that if she had suffered any damage she would have an adequate remedy at law by way of compensating damages. These findings are beside the issue. ■ Plaintiff's right to a decree of specific performance does not depend upon her ability to show that she has suffered monetary damage by reason of the breach of the agreement. The law is that it is presumed that the breach of an agreement to convey real property cannot be compensated by the allowance of damages, and that one who contracts to acquire real property has not an adequate remedy at law in the event of a breach of the contract by the seller. (Civ. Code, sec. 3387.) This is a codification of the equity rule, which is stated by Mr. Pomeroy as follows: "Whenever a contract concerning real property is in its nature and incidents entirely unobjectionable,—when it possesses none of those features which, in ordinary language, influence the discretion of the court,—it is as much a matter of course for a court of equity to decree its specific performance as it is for a court of law to give damages for its breach." (Pomeroy's Equity Jurisprudence, 4th ed., vol. 4, sec. 1402.) "The jurisdiction to enforce performance of contracts specifically is exclusive, for the remedy itself is most distinctively equitable and completely beyond the judicial methods of the law courts; . . . The doctrine is fundamental that this jurisdiction will be called into operation, and the specific performance will be decreed only in those classes of cases in which, according to the views taken by the equity court, the legal remedy of compensatory damages is, from its essential nature, insufficient, and fails to do complete justice between the litigant parties. It is true that in applying this doctrine the courts of equity have established the further rule that in general the legal remedy of damages *is* inadequate in all agreements for the sale or letting of land, or of any estate therein; and therefore in such class of contracts the jurisdiction is always exercised, and a specific performance granted, unless prevented by other and independent equitable considerations which directly affect the remedial right of the complaining party; but this result does not interfere with nor modify the principle which is under discussion." (Pomeroy's Equity Jurisprudence, 4th ed., vol. 1, sec. 221.)

"Where land, or any estate or interest in land, is the sub-

ject matter of the agreement, the jurisdiction to enforce specific performance is undisputed, and does not depend upon the inadequacy of the legal remedy in the particular case. . . . Equity adopts this principle, not because the land is fertile, or rich in minerals, but because it is land, a favorite and favored subject in England and every country of Anglo-Saxon origin. Land is assumed to have a peculiar value, so as to give an equity for specific performance, without reference to its quality or quantity.'' (58 C.J. 1024-1025.) These principles have long been accepted in California as the law on the subject. (*Wheat* v. *Thomas*, (1930) 209 Cal. 306, 317 [287 P. 102]; *Fleishman* v. *Woods*, (1901) 135 Cal. 256, 261 [67 P. 276]; *Glock* v. *Howard & Wilson Colony Co.*, (1898) 123 Cal. 1, 6 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199].) Plaintiff's right to recover any damages she may have sustained by reason of defendant's breach of the contract or the fact that she may have suffered no monetary damage would not defeat her right to specific performance.

If the court had found the contract to be just and reasonable and the consideration adequate and that defendants' consent to the exchange had been given freely, plaintiff would have been entitled to a decree of specific performance. Those are the questions of fact upon which the rights of the parties depend and they have not been adjudicated.

By the judgment defendants were awarded the sum of $100 which they had paid to plaintiff's agent. They were not entitled to the return of their money unless they had made a valid rescission. Although there was a finding that they had rescinded, there was no finding of facts which would have entitled them to rescind and the judgment in this respect also is unsupported by the findings.

The judgment is reversed.

Desmond, P. J., and Shaw, J. pro tem., concurred.

A petition for a rehearing was denied June 30, 1943, and respondents' petition for a hearing by the Supreme Court was denied August 5, 1943.