[No. B057235. Second Dist., Div. Seven. Aug. 4, 1992.]

BRIAN WILSON, Plaintiff, Cross-defendant and Respondent, v.
VON A. GENTILE, Defendant, Cross-complainant and Appellant.

**COUNSEL**

Richard H. Benes for Defendant, Cross-complainant and Appellant.

Rosenfeld, Meyer & Susman, Kirk M. Hallam and David F. Graber for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**JOHNSON, J.**—In this case we are asked to interpret a clause requiring an option to be exercised "within thirty (30) days prior to the expiration" of the

option period. Appellant argues this language requires the option to be exercised "no later than" 30 days *before* the option period expires. We conclude this language instead allows the option to be exercised *during* the 30-day period immediately preceding the expiration of the option. Accordingly, we affirm the trial court's judgment which enforced an option exercised seven days before the option period expired.

## FACTS AND PROCEEDINGS BELOW

On May 21, 1987, Brian Wilson (Wilson) entered into a "lease option" agreement with Von Gentile (Gentile) for a residence Gentile owned. This agreement provided for Wilson's rental of this residence for a 20-month period—from June 1, 1987, through January 31, 1989. It also granted Wilson a six-month option—from June 1, 1987-November 30, 1987—to purchase this property for $850,000. The option clause required Wilson to exercise that right personally in writing "within thirty (30) days prior to the expiration of this option; . . ."

On November 24, 1987—seven days prior to the expiration of the option——Wilson wrote Gentile announcing he was exercising the option. Contending the relevant language—the "within thirty (30) days prior to expiration of this option"—required Wilson to have provided this written notice "no later than" 30 days prior to the expiration of the option, Gentile refused to acknowledge the letter or to honor the option and go forward with the sale. Wilson responded by ceasing his rental payments under the lease.

Gentile then brought an unlawful detainer action against Wilson. Wilson, in turn, filed an action for declaratory relief and specific performance to compel sale of the residence to him. Gentile filed a cross-complaint for breach of contract and reformation against Wilson and seeking indemnification and professional negligence damages against his own broker and the broker who represented Wilson. The unlawful detainer was consolidated with the specific performance action.

Wilson moved for summary judgment on or about October 16, 1990. The trial court heard and granted this motion on November 20, 1990. After examining the "lease option" agreement and hearing testimony and argument, the trial court found "the words can have only one legal meaning." The judge ruled the clause requiring exercise of the option "within thirty (30) days prior to the expiration" of the option meant the option could be exercised any time within the 30 days immediately before the 6-month option period ended. On January 29, 1991, the trial court entered judgment decreeing specific performance of the sale under the terms of the option. Gentile filed a timely appeal.

### DISCUSSION

■ We begin by analyzing the logical interpretation of the "within . . . days prior to . . ." clause applying the primary definitions of the word and ordinary rules of grammar. The primary definition of the word "within" is "inside, enclosed by" (Oxford Am. Dict. (1980) p. 799.) The term "prior to" is defined as "before, prior to that date." (*Id.* at p. 531.)

The use of the word "within" in the context of time computation requires two boundary points, together framing a time period "inside" of which or "enclosed by" which the relevant events must occur. One of those boundary points tells us when the time period *begins* and the other tells us when it *ends*. Any date which falls between the beginning point and the ending point is "within" the designated time period.

In some documents both the beginning point and the ending point of the time period are defined precisely by reference to specific dates. As an example, someone might be authorized to do something "within the period *from* March 1, 1992, *to* April 30, 1992." On other occasions the beginning point is defined by naming a specific date but the ending point is described not by giving a specific date but by specifying it as a given number of days after the beginning point. Again, merely as an example, someone can be authorized to do something "*within* 60 days *after* March 1, 1992." Occasionally the time period is defined by establishing a midpoint and setting the beginning and ending boundaries at equal distances before and after that midpoint. Thus a person might be authorized to do something "*within* 30 days *before or after* March 31, 1992." Finally, on other occasions the end point is fixed by naming a specified date and the beginning point is defined as a certain number of days before that end point. Thus, someone might be authorized to do something "*within* 60 days *prior to* April 30, 1992."

It is apparent that as a pure matter of logic and grammatical construction the phrase used here—"within thirty (30) days prior to the expiration of [the] option"—is an example of the fourth and last method of defining a time period described above. Here a fixed *end point* is established—the date the option expired. (In this case that date is Nov. 30, 1987.) Then, the *beginning* point is defined as a given number of days *before* the end point. (In this case that point is set at 30 days before Nov. 30, 1987—that is, Nov. 1, 1987.) The interval between the beginning date and the ending date is the time frame "within" which the relevant event—in this case the exercise of the option—must occur.

This natural and logical interpretation of the word combination "within . . . days prior to . . ." a given date or event has been followed by

California courts in most contexts. A code provision, for example, gives priority to wage claims for work performed *"within* 90 days *prior to"* a writ of attachment. (Code Civ. Proc. § 1206, italics added.) In *American Machine etc. Co.* v. *Golden State Lanes, Inc.* (1967) 253 Cal.App.2d 855 [61 Cal.Rptr. 554], the Court of Appeal construed this provision to confer priority solely on wage claims based on work actually performed in the time period beginning within 90 days before the writ of attachment and ending with the date of the writ of attachment. (253 Cal.App.2d at p. 858.) ▆ ▆ Significantly for our purposes the *American Machine* court specifically *excluded* from this priority those wage claims, including vacation pay claims, for work performed *before* the time period commencing 90 days before bankruptcy.[1] (See also *Steele* v. *Internatl. Air Race Assn.* (1942) 50 Cal.App.2d 176 [122 P.2d 593], interpreting this same language in this same code provision in the same way.)

Justice Kaufman was called upon to interpret a somewhat different formulation in *Simons* v. *Young* (1979) 93 Cal.App.3d 170 [155 Cal.Rptr. 460], 174—a provision in a lease requiring an option to renew that lease to be exercised "not later than three (3) months from the termination of said lease. . . ." However, in the course of explaining why a lessee's attempted exercise of that option a week before the lease period expired came too late, Justice Kaufman interpreted another provision using the "within . . . days prior to . . ." formulation to support his view. This provision authorized the lessor to place a "for rent" sign on lessee's property "at any time within thirty (30) days *prior* to the expiration of this Lease." (Italics in original.) Justice Kaufman interpreted the latter clause to permit the lessor to put up a "for rent" sign at anytime within the 30-day period bounded by the beginning date of 30 days before the lease expired and the ending date when the lease expired. The court found the lessor's right to advertise for a new renter in this last month before the lease expired was inconsistent with an interpretation the lessee had an option to renew which extended up to that expiration date.

In a similar vein, the Probate Code invalidates any bequest a testator gives to a charity *"within* 30 days *prior to"* his or her death. In the case of *Estate*

---

[1] Appellant seeks to discredit this precedent on grounds the court did not specifically explain why it was adopting this interpretation of the "within . . . prior to . . ." language. According to appellant, since this issue was not "considered" this case is not authority for the proposition that this is the proper interpretation of the language in dispute. However, this argument ignores the fact a judicial holding includes every proposition necessary to the result the court reaches. In *American Machine etc. Co.* v. *Golden State Lanes, Inc., supra,* 253 Cal.App.2d at page 857, the precise definition of the time period circumscribed by the clause "within 90 days prior to . . ." was absolutely essential to the holding in that case—that wage claims for work performed during certain times were to be included and those before that time period were to be excluded from the status of a priority claim. The fact the court found this construction of the subject language so natural and obvious as to not require a lengthy explanation for its choice in no sense impugns the precedential value of this interpretation.

*of Halm* (1925) 196 Cal. 778 [239 P. 307], this code provision was used to void a bequest to Heidelberg University which the testator made seven days before his death. The Supreme Court construed the language "within 30 days prior to" to define a time period starting 30 days before the decedent's death and ending at the time of death. Consequently, a bequest made within that time period—that is between the beginning point and the end point of the time period—was invalid. (See also *Sanger* v. *Ryan* (1898) 122 Cal. 52 [54 P. 522] [corporation's assignment of shares to individual four days before its insolvency was invalid since the assignment came "*within* thirty days *prior to* insolvency proceedings"], italics added.)

 If we apply this natural and logical construction of the "within 30 days prior to expiration of [the] option" language in the "lease option" agreement here, it is obvious Wilson's written notice of intent to exercise his option to buy was timely. According to the plain meaning of the words, the notice had to be given inside a time period which starts with the beginning point of November 1, 1987 (which is 30 days before the expiration of the option) and terminates with the end point of November 30, 1987 (which is the date the 6-month option expired.)

To argue the "within . . . days prior to . . ." language should not be given this obvious and logical interpretation in the context of "options to buy," Gentile points to California and non-California cases interpreting this language in the context of "options to renew leases." These cases all confront a unique situation. The lessee is given an option to renew the lease for a subsequent time period which option is to be exercised "within . . . days prior to the expiration of" the initial lease. This language creates a patent absurdity if the "within . . . days prior to . . ." language is given the same ordinary and logical interpretation as it is in most other contexts. The absurdity is that the lessor may not learn whether the lessee is exercising his or her option to renew until the moment the lease expires. Thus the lessor would not be in a position to advertise the premises for rent or otherwise accept other lessees for the subsequent time period until the existing lease had expired without the original lessee exercising the option.

Faced with this absurd result, the courts early on decided to rescue lessors from their poor choice of words and treat the word "within" as if it did not exist. Some courts indeed use the technical grammatical term and describe the word "within" when inserted in such an option provision as a "pleonasm" [a redundancy]. However, as we have seen from other contexts, the word "within" is not always a pleonasm merely because it appears in juxtaposition with the term "prior to." So it is not a pleonasm as a matter of grammatical construction but a pleonasm only when a court chooses to treat

it as such in order to avoid what the court perceives to be an absurdity as a matter of presumed intent of the parties or of public policy.

The opinion on which Gentile places primary reliance is the first California case to confront the "within . . . days prior to . . ." language in the context of an option to renew a lease—*Royal Grocery Co.* v. *Oliver* (1922) 57 Cal.App. 278 [207 P. 61]. That court did not devote much effort to an attempt to construe the language as a matter of logic or grammar. Instead, it focused on the absurdity of a normal interpretation of those words in the context of an expiring lease. On this basis it struck the word "within" as a pleonasm and required the lessee to exercise the option to renew *at least* 90 days prior to the expiration of the lease rather than *within* 90 days of the lease's expiration.[2] Another California appellate case and several out-of-state cases have reached the same conclusion for the same reason in this or similar contexts. (*Harmon* v. *Hopkins* (1931) 116 Cal.App. 184 [2 P.2d 540]; see also, e.g., *Berkow* v. *Hammer* (1949) 189 Va. 489 [53 S.E.2d 1]; *Drummond Co.* v. *Friedman* (Ala. 1977) 350 So.2d 323.)

The same absurdities and presumed intent are not present when the "within . . . days prior to . . ." language is used in an "option to sell" clause rather than an "option to renew" a lease. Indeed a California appellate court was confronted with similar although not identical language in the context of an "option to sell" and had no problem reconciling the normal and logical interpretation of this language with the presumed intent of the contracting parties (*Riverside Fence Co.* v. *Novak* (1969) 273 Cal.App.2d 656 [78 Cal.Rptr. 536]).

The language of the option in *Riverside Fence* permitted the optionee to exercise his option to buy "within thirty (30) days of [rather than prior to] the termination of this Lease or any option of renewal of said lease." To be consistent with the rationale of *Royal Grocery*, any California court interpreting this "within . . . days *of* . . ." language in the context of a lease renewal—rather than an expiring option—would have felt compelled to

---

2"[W]e can arrive at no other conclusion than that it was the intention of the parties here that the lessee should give the lessor at least ninety days' notice of its intention to continue the tenancy. To hold otherwise would, in our opinion, be giving the option an unreasonable and unjust interpretation.

"The usual purpose of requiring the lessee in any case to give notice of the exercise of an option to renew the lease is that the lessor may not be compelled to wait until the last day of the term of the lease before he may know whether or not the lessee desires to continue to occupy the premises for a further term and thereby take the risk of having his premises remain idle for an indefinite period in the event that said option to renew the lease is not exercised . . . . [W]e believe, that it was the clear intention of the parties that the notice should be served *at least* ninety days prior to the date on which the lease expired." (*Royal Grocery Co.* v. *Oliver, supra*, 57 Cal.App. 278, 279-280, italics added.)

interpret these words as requiring the option to renew the lease to be exercised *at least* 30 days before the expiration of the lease. The same "absurdity" and policy considerations inherent in the "within 30 days *prior to* the expiration of the lease" language are inherent in the "within 30 days *of* the expiration of the lease" language as well.

The *Riverside Fence* court, however, viewed this language very differently when it appeared in the context of an "option to buy" rather than an "option to renew a lease."[3] It found no problem whatsoever in construing the language to require—and allow—the optionee to exercise his or her option within the period bounded by 30 days before the expiration of the option and the date the option period expired—which happened to be in the last 30 days of a renewed lease. As the court held: "A reasonable construction of the words 'within thirty days of the termination of this Lease' is that the phrase was intended to mean the 30-day period immediately preceding expiration of the term. It is reasonable to assume that the lessors desired to retain the right to collect the rents reserved for the entire term of the lease. The lease as renewed expired on October 31, 1965. The tender of performance and the communications between Mrs. Moore and Mr. Novak all occurred prior to that date." (*Riverside Fence Co. v. Novak, supra,* 273 Cal.App.2d 656, 663.)[4]

The same interpretation and rationale apply in the instant case, even though the language of the "option to buy" clause is slightly different.

---

[3]We decide this case on a straightforward interpretation of the plain language of the option provision in this "lease option" agreement. We do not find the language ambiguous and consequently have no reason to resort to extrinsic evidence as to the parties' intent in using these words. Nonetheless, we take some comfort from the testimony of the agents who negotiated this agreement and what they understood this language to mean. Both the agent representing Wilson and the agent representing Gentile gave declarations in the summary judgment proceeding to the effect they understood the agreement was intended to allow Wilson to exercise his option to buy this property by sending a letter any time during the last month of the option period—that is, between November 1 and November 30, 1987.

[4]In a somewhat fractured holding, a five-judge Louisiana appellate court lends further support to this interpretation of the "within . . . days prior to" language in the context of an "option to sell." (*Greenleaf Plantation, Inc.* v. *Kieffer* (La.Ct.App. 1981) 403 So.2d 100, 101.) In this case, the contract required the optionee corporation to exercise its option through an action of the corporate board conveyed in writing to the optionor "within thirty days prior to [the date on which the option expired]." As it turned out, the corporate president notified optionor the corporation was exercising its option but did so more than 30 days before the expiration of the option. Then, within the 30-day preexpiration period, the corporate attorney notified the optionor of the same thing. The appellate court enforced the option against the optionor but did so in a 2-1-2 decision. Although there is some ambiguity in their opinion the two judges responsible for the lead opinion expressly rule the corporate attorney's notification 20 days before the expiration of the option (and thus within the 30-day period immediately preceding the expiration of the option) was valid under the language of the contract. Significantly, none of the other three judges contended the attorney's attempt to exercise the option was untimely. Instead, the two dissenting judges quarreled with the authority of either

Indeed, to the extent there are differences in the two cases, the instant case is the stronger one for allowing the option to be exercised within the last 30 days before the option expired.

First, the term "prior to" is more precise than the term "of " in setting the boundaries of the relevant time frame as between 30 days before the expiration of the option and the expiration of that option. It could be argued that fixing the exercise period at "within 30 days *of* " the expiration of the option actually creates a 60-day window—from 30 days before the option expires to 30 days after it expires—since both boundaries are "within 30 days *of* " the expiration date. The *Riverside Fence* court was not required to address this issue since the option had been exercised within 30 days *before* the option expired. Moreover, there is an inherent ambiguity in allowing an option to be exercised *after* it purportedly has expired. Nonetheless, the point is the "prior to" language only serves to remove the ambiguity inherent in the use of the word "of" and with greater precision to narrow the time frame to the 30-day period which ends with the expiration of the option. It does not abolish that 30 days as a time within which the option can be exercised, as Gentile argues it does.

The second difference between *Riverside Fence* and the instant case is even more compelling. In *Riverside Fence* the option to buy expired at the same time as the period of the lease itself. Consequently, under the construction that court placed on the "within 30 days of" the expiration of the option the owner-lessor would not necessarily learn whether it would be required to find a new tenant or indeed would still be owner of the property until the last day of the tenancy. So the owner-lessor in *Riverside Fence* was put in a situation quite similar to the lessor in *Royal Grocery*—the very quandry which led the latter court to interpret similar language to require exercise of an option to *renew* the lease *at least* the specified number of days *before* the expiration of the lease. Yet the *Riverside Fence* court ignored the owner-lessor's quandry in the context of an "option to buy" and found the right to exercise existed in that last 30 days up to and including the last day of the lease period.

In the instant case, however, the owner-lessor was not confronted with this quandry. The lease extended for a period of 20 months, but the "option to buy" existed only for the first 6 months of the lease. Consequently, unlike

the president or the attorney to exercise the option in the name of the corporation's board and the fifth judge broke the tie by ruling the corporate president had the requisite authority and had effectively exercised the option. Once again, however, this fifth and deciding judge did not conclude the corporate attorney's exercise of the option was ineffective because it came too late but only because the attorney lacked the requisite authority to act in the name of the corporate board.

*Riverside Fence* or *Royal Grocery*, construing this clause to grant Wilson the 30 days immediately preceding the expiration of the option period to exercise that option did not push Gentile into a situation where it was too late to find new tenants or buyers for the property before the tenancy ended. The "option to buy" expired a full 14 months before the lease. This gave Gentile more than enough time to seek new lessees or purchasers before Wilson would be vacating the residence.

Accordingly, the holding and rationale of *Royal Grocery* do not apply in the instant case for two reasons. First, this is an "option to buy" not an "option to renew a lease" which under *Riverside Fence* alters the interpretation of the option clause—even when the option to buy expires on the last day of the lease. Second, in the instant case the "option to buy" expires long before the lease period itself expires thus avoiding the lessor's quandary which was the basis of the court's interpretation of the "within . . . days . . . prior to" language in *Royal Grocery*.[5]

For these reasons, in the context of an "option to buy" we conclude the language "within 30 days prior to" the expiration of the option period[6] is properly interpreted to allow exercise of the option during the 30-day period immediately preceding the expiration of the option. ■ ■ ■ ■ Accordingly, the trial court was correct in granting summary judgment finding Wilson had timely exercised his option to purchase this property and in ordering specific performance.[7]

---

[5]Indeed the rationale of the *Royal Grocery* opinion would not seem to apply even to an "option to *renew* a lease" if that option period expires months before the lease term itself expires rather than expiring as it did in *Royal Grocery* on the same date as the lease.

[6]Gentile asserts in his brief that the form lease promulgated by the California Association of Realtors uses this same language to describe the time frame within which lessees must exercise any option to renew the lease for succeeding terms. He then argues we would unsettle thousands of leases if we were to interpret the "within . . . days prior to the expiration of the lease" clause to allow lessees to wait until the last day of the lease to announce whether they intended to renew.

In this opinion, however, we find it unnecessary to express an opinion about the proper construction of this combination of words in the context of "options to renew" leases. We simply need not and do not reach that issue. To the extent existing or future leases use these words to describe the period during which an "option to renew" a lease must be exercised, those leases should not be affected by our resolution of a different issue—the interpretation of this language in the context of an "option to buy" property. Accordingly, this opinion does not and should not affect the current legal status of any leases using the language approved in *Royal Grocery* to define when "options to renew" must be exercised.

[7]As a fallback argument Gentile devoted a single page in his opening brief to a contention the trial court should not have granted specific performance even if Wilson's exercise of the option was legal and timely. Gentile argues there were insufficient allegations and evidence of adequate consideration and reasonableness. Our review of the evidence—including the circumstance of an option price arrived at by the parties only months before the option was

## DISPOSITION

The judgment is affirmed. Respondent is awarded his costs on appeal.

Lillie, P. J., concurred. Woods (Fred), J., concurred in the judgment.

A petition for a rehearing was denied September 3, 1992, and appellant's petition for review by the Supreme Court was denied October 22, 1992.

---

exercised—convinces this court Gentile failed to raise a triable issue as to adequate consideration or reasonableness. Furthermore, although it is true Wilson's complaint did not contain specific allegations of adequate consideration or reasonableness, we find Gentile waived this error. He failed to demur to the complaint on this or any other grounds. He only raised this defect in the complaint through a general allegation in his answer to the effect the complaint "failed to state a cause of action." Nor did he even argue this specific omission in the pleadings during the summary judgment proceedings. Accordingly, it comes too late to raise this issue on appeal. (See generally *Bonney* v. *Petty* (1932) 125 Cal.App. 527 [13 P.2d 969]; *Remmers* v. *Ciciliot* (1943) 59 Cal.App.2d 113 [138 P.2d 306].) For this court to reverse this judgment on these grounds at this point in the proceeding would only serve to encourage "gamesmanship" of the worst order in our trial courts.